Monica LEDESMA, Appellant,

v.

ALLSTATE INSURANCE COMPANY, Appellee.

No. 05–99–01772–CV.

Court of Appeals of Texas, Dallas.

Oct. 10, 2001.

9. It is perhaps time our Supreme Court resolves the three way interpretations of these important laws.

Jane Legler Byrne, Dallas, for Monica Ledesma.

Dan Hartsfield, Maurice E. Klein, Samara L. Kline, Baker & Botts, L.L.P., Dallas, for Allstate Insurance Company.

Before Chief Justice THOMAS, and Justices MOSELEY and BRIDGES.

## OPINION

MOSELEY, Justice.

Monica Ledesma sued her employer, Allstate Insurance Company ("Allstate"), asserting claims of sexual discrimination, retaliation, and sexual harassment under the Texas Commission on Human Rights Act ("TCHRA" or "the Act"). She also asserted common law claims for negligent training/negligent supervision and intentional infliction of emotional distress. The trial court granted Allstate's Plea to the Jurisdiction and dismissed her TCHRA claims with prejudice; it also eventually sustained Allstate's special exceptions to her common law claims and dismissed those with prejudice. Ledesma appeals, complaining of both actions.

We hold a "right to sue" letter issued by the federal Equal Employment Opportunity Commission ("EEOC") does not trigger the sixty-day time period for filing a suit asserting claims under the TCHRA as provided by section 21.254 of the Texas Labor Code. Therefore, we conclude the trial court erred in granting Allstate's jurisdictional plea and dismissing Ledesma's claims under the Act. Secondly, we hold the Act does not preempt Ledesma's common law claims for negligent supervision/training and intentional infliction of emotional distress. Therefore, we conclude the trial court erred in sustaining Allstate's special exceptions and dismissing her common law claims with prejudice. We reverse the trial court's judgment and remand the case for further proceedings.

## FACTS

In 1997, Ledesma worked for Allstate. On November 6, 1997, Ledesma timely filed a complaint with the EEOC alleging she was sexually harassed by an Allstate employee. Specifically, she alleged claims for sex discrimination, retaliation for opposing illegal employment practices, and committing, authorizing, condoning, and/or ratifying unwelcome sexual advances. When she filed the complaint, she checked a "dual filing" box on the complaint form, indicating she wished to file her complaint with both the EEOC and the Texas Commission on Human Rights ("TCHR").[1]

On June 11, 1998, Ledesma received a "right to sue" letter from the EEOC, which stated she had ninety days from her receipt of that letter to file suit asserting her claims under federal law. *See* 42 U.S.C. § 2000e–5(c) (West 1994). Eighty-nine days later, on September 8, 1998, Ledesma sued Allstate in state court.[2]

---

1. Pursuant to a Workshare Agreement between the EEOC and the TCHR, each of those entities designated the other as its agent for purposes of receiving employee complaints and drafting charges. *See Griffin v. City of Dallas*, 26 F.3d 610, 612–13 (5th Cir.1994);

*Vielma v. Eureka Co.*, 218 F.3d 458, 461, 463–64 (5th Cir.2000) (citing *Griffin* ).

2. Ledesma also brought TCHRA and assorted common law claims against her supervisor, William Barefield, and other employers, Synadyne III, Inc. and William Barefield Agen-

However, she asserted no claims under federal law. Instead, Ledesma alleged causes of action for violations of the Act and tort causes of action for negligent training, negligent supervision, and intentional infliction of emotional distress.

The day Ledesma filed suit, she also asked the TCHR for a "right to sue" letter under the Act. *See* TEX. LAB.CODE ANN. § 21.254 (Vernon 1996). That letter authorizes a complainant to file suit alleging claims under the Act within sixty days of the letter's receipt. *Id.* However, the TCHR's "right to sue" letter is not jurisdictional; a complainant may file suit asserting claims under the Act before receiving the letter. *See id.* § 21.252(d) ("Failure to issue the notice of a complainant's right to file a civil action does not affect the complainant's right . . . to bring a civil action against the respondent."); *Eckerdt v. Frostex Foods, Inc.*, 802 S.W.2d 70, 71 (Tex.App.—Austin 1990, no writ). Ledesma received her TCHR right to sue letter on September 28, 1998.

■ Allstate filed a plea to the jurisdiction and an original answer. In its plea to the jurisdiction, Allstate alleged: (1) Ledesma failed to file with the TCHR and thus failed to exhaust her administrative remedies; (2) Ledesma's TCHRA claims were not timely filed because she did not bring them within sixty days after receiving the EEOC "right to sue" letter; and (3) Ledesma's claims were barred by her failure to make an election of remedies under section 21.211 of the Texas Labor Code. In its original answer, Allstate also

specially excepted to Ledesma's pleadings. The trial court granted Allstate's jurisdictional plea and dismissed Ledesma's claims under the Act with prejudice.[3] However, the trial court denied Allstate's special exceptions to Ledesma's claims for intentional infliction of emotional distress and negligent supervision/training.

Thereafter, Allstate filed an amended answer asserting additional special exceptions aimed at those two causes of action. Specifically, Allstate asserted Ledesma's common law claims were preempted by the Act. After a hearing, the trial court sustained Allstate's special exceptions and dismissed Ledesma's common law claims with prejudice.

## PLEA TO THE JURISDICTION

■ In her first issue, Ledesma contends the trial court erred in granting Allstate's plea to the jurisdiction because her suit alleging a claim under the TCHRA was timely filed. Because subject matter jurisdiction is a legal question, we review the trial court's ruling on a plea to the jurisdiction under a *de novo* standard of review. *City of Fort Worth v. Pastusek Indus., Inc.*, 48 S.W.3d 366, 369 (Tex. App.—Fort Worth 2001, no pet.).

Here, the relevant facts are not in dispute. Ledesma dual-filed her claims with the EEOC and TCHR on November 6, 1997. She received the EEOC's "right to sue" letter on June 11, 1998. She filed suit in state court asserting only state claims on September 8, 1998. She asked for

---

cy. The trial court granted Allstate's motion to sever, severing Allstate's claims from those of the other defendants and rendering the judgment as to Allstate final and appealable. This opinion concerns claims against Allstate only.

**3.** A trial court is powerless to dismiss a cause "with prejudice" after determining it lacks

subject matter jurisdiction. *See Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 406 (Tex.2000); *Herring v. Welborn*, 27 S.W.3d 132, 145 (Tex.App.—San Antonio 2000, pet. denied). However, because we conclude the trial court erred in granting the plea to the jurisdiction, the "with prejudice" characterization is of no consequence.

TCHR's "right to sue" letter on September 8, 1998, and received it on September 28, 1998. Thus, whether the trial court properly granted Allstate's jurisdictional plea hinges on whether a "right to sue" letter issued by the EEOC triggered the sixty-day period for Ledesma to file suit alleging claims under the Act. Ledesma argues it does not and directs this Court's attention to a recent Fifth Circuit opinion concerning the issue, *Vielma v. Eureka Co.*, 218 F.3d 458 (5th Cir.2000).

In that case, the employee dual-filed a complaint with the EEOC and the TCHR alleging age and disability discrimination. *Id.* at 461. The EEOC dismissed the employee's charge and issued a "right to sue" letter, which gave the employee ninety days within which to file suit on her federal law claims. *Id.* Ninety-one days later, the employee filed suit in Texas state court, alleging age and disability discrimination under the Act. *Id.* at n. 1. The employee also requested a "right to sue" letter from the TCHR, which she received shortly after filing her state court suit. After removing the case to federal court on diversity grounds, the employer obtained summary judgment on the basis that the employee's claims under the Act were time-barred because she did not file suit within sixty days of receiving the EEOC's "right to sue" letter. *Id.*

The Fifth Circuit reversed the trial court's judgment. It noted section 21.254 of the TCHRA provides that a claimant is to file suit asserting his or her claims under the Act "within 60 days after the date *a notice* of the right to file a civil action is received." Tex. Lab.Code Ann. § 21.254 (emphasis added). After concluding the phrase "a notice" in the section was "undeniably somewhat ambiguous," the court engaged in a lengthy statutory construction analysis. *Vielma*, 218 F.3d at 464–68. It concluded the "notice" refer-

enced in section 21.254 is the "notice of the complainant's right to file a civil action" or "right to sue" letter issued by the TCHR under section 21.252 of the Act. Thus, it held the EEOC's "right to sue" letter did not trigger the sixty-day filing period under section 21.254, and it reversed the trial court's summary judgment disposing of the employee's claim under the Act. *Id.*

If we agree with Ledesma's and *Vielma's* construction of section 21.254, then the trial court erred in granting Allstate's plea to the jurisdiction and dismissing Ledesma's claims under the Act. Allstate does not attempt to distinguish *Vielma* from the facts in this case. Rather, it vigorously sets forth several arguments in support of its contention that *Vielma* incorrectly construed section 21.254. After reviewing language of the Act, including section 21.254, the analysis in *Vielma*, and Allstate's arguments, we agree with the conclusion set forth in *Vielma*.

■ We construe a statute by determining and giving effect to the legislature's intent. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex.1999) (citing *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998)). We look first at the statute's plain and common meaning. *Id.* In determining plain meaning, we read words and phrases in context, and we construe them according to common rules of grammar and usage. *See* Tex. Gov't Code Ann. § 311.011(a) (Vernon 1998); *Robinson v. Budget Rent–A–Car Sys., Inc.*, 51 S.W.3d 425, 428–29 (Tex.App.—Houston [1st Dist.] 2001, no pet.). We consider the statute as a whole rather than its isolated provisions. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex.2001) (citing *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985)).

■ Although we consider the Act (found at subchapter F of chapter 21 of the Texas Labor Code) as a whole, our analy-

sis focuses on sections 21.252 through 21.254. Section 21.252(a) provides a complainant may request from the TCHR "a written *notice of the complainant's right to file a civil action.*" TEX. LAB.CODE ANN. § 21.252(a) (emphasis added). Section 21.252(b) adds that the TCHR's failure to issue "the *notice of a complainant's right to file a civil action* " does not affect the complainant's rights to bring a civil action "under this subchapter...." *Id.* § 21.252(b) (emphasis added). Section 21.253 provides for when and how the TCHR should issue "*a notice of the right to file a civil action ....*" *Id.* § 21.253 (emphasis added). The section at issue in this case, section 21.254, provides in its entirety: "Within 60 days after the date *a notice of the right to file a civil action* is received, the complainant may bring a civil action against the respondent." *Id.* § 21.254 (emphasis added). Additionally, we note these sections do not mention the EEOC, its procedures, or any EEOC-issued notice of a complainant's right to sue on his federal claims.[4]

Reading section 21.254's reference to "a notice of the right to file a civil action" in the context of the Act's multiple references to "notices" issued by the TCHR concerning a "right to file a civil action," and noting the absence of any reference to the EEOC or any notice commonly issued by it, we hold the "notice" referred to in section 21.254 is the same notice referenced in sections 21.252 and 21.253, to wit: a notice issued by the TCHR.

Allstate's countervailing argument, made in the context of discussing *Vielma,* is based principally on the indefinite article modifying "notice" in section 221.254. Allstate argues "a notice" means *either* a notice issued by the TCHR pursuant to the Act, or a notice issued by the EEOC pursuant to title 42, section § 2000e–5(c) of the United States Code. According to Allstate, *Vielma's* construction essentially rewrites section 21.254 by inserting the phrase "from the commission" into the section to modify the word "notice." Allstate argues this rewriting: (1) departs from the principle that courts determine the legislature's intent by first looking at the plain and common meaning of the words used in the statute; and (2) is without reference to any "extraordinary circumstances" that might justify the court's action. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 867 (Tex.1999) (holding statutes should be enforced as written absent "[o]nly truly extraordinary circumstances showing unmistakable legislative intent").

We disagree with Allstate's criticism of *Vielma* and, by inference, our analysis of section 21.254. To the extent Allstate criticizes *Vielma* for rewriting the statute by inserting "from the commission" after "a notice of the right to file a civil action is received," we read Allstate's preferred construction as seeking to insert the longer phrase "from the commission or the Equal Employment Opportunity Commission." Moreover, neither this Court nor, as we read it, *Vielma,* is rewriting section 21.254 to add an element absent from the statute—the statute says its sixty-day period is triggered by receipt of "a notice." Rather, we must determine, as did *Vielma,* what was the "notice" to which the legislature was referring. Section 21.254 could be construed as referring to either a notice issued by the TCHR, a notice issued by the EEOC, and/or perhaps some other type of unspecified notice. However, viewing the phrasing of section 21.254 in the context of the Act as a whole, we conclude the plain meaning of "notice" is the notice

---

4. We note the portion of the Act setting forth its purpose references "Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *See* TEX. LAB.CODE ANN. § 21.001.

issued by the TCHR. In view of the Act's mixed references to both "a notice" and "the notice," as summarized above, Allstate's argument places too much emphasis on the exact article used to modify the word "notice" in section 21.254.

Allstate also contends the Fifth Circuit's holding in *Vielma* cannot be reconciled with the election of remedies provision in section 21.211, which provides:

> A person who has initiated an action in a court of competent jurisdiction or who has an action pending before an administrative agency under other law or an order or ordinance of a political subdivision of this state based on an act that would be an unlawful employment practice under this chapter may not file a complaint under this subchapter for the same grievance.

TEX. LABOR CODE ANN. § 21.211 (Vernon 1996). According to Allstate, this section prohibits filing a complaint with the Texas agency if an EEOC action based on the same conduct has been previously filed.

This Court recently interpreted section 21.211 in *Williams v. Vought*, 68 S.W.3d 102 (Tex.App.—Dallas 2001, no pet.). In *Vought*, we decided the phrase "of this state" modified everything after the word "initiated." This interpretation effectually means that "only actions pending in *state* courts and agencies would limit an employee's right to seek relief under the [Act]; an action pending in a *federal* court or agency would not limit an employee's right to seek relief under the [Act]." *See id.* at 109-110 (emphasis added). This interpretation supports the purpose of the statute to provide maximum review and relief in cases of unlawful employment practices at the state level. *See id.* at 111. To hold otherwise would restrict "an employee's right to seek relief under the Act because of a filing with the EEOC under parallel federal law[, which] would defeat the stat-

ed purpose of the statute to provide additional protection at the state level." *Id.* Furthermore, "[b]ecause the state and federal statutes and commissions work together to provide the same remedy, [an] interpretation of section 21.211 as barring simultaneous actions under the TCHRA and the EEOC would not result in an election of remedies but in an election of forums." *Id.* Based on our interpretation of section 21.211 in *Vought*, we conclude the *Vielma* holding—the EEOC's "right to sue" letter does not trigger the sixty-day period for filing suit under TCHR—does not conflict with the election of remedies provision in section 21.211. We reject Allstate's argument to the contrary.

Allstate next contends *Vielma* undermines the benefits of the Workshare Agreement because it promotes duplication and inefficiency within already overburdened agencies. We disagree. Even under *Vielma*, the agency relationship between the TCHR and the EEOC remains intact. As the TCHR's agent, the EEOC receives and processes the complaints, which still furthers the purpose of the Workshare Agreement. *See Vielma*, 218 F.3d at 462; *Griffin*, 26 F.3d at 612. Because the EEOC acts as the TCHR's agent for receiving complaints, complainants do not have to file their complaints twice. *See Vielma*, 218 F.3d at 464. Allstate presents no authority, nor do we find any, to suggest the scope of the agency relationship extends to the reciprocal issuance of the TCHR's and EEOC's "right to sue" letters. *See Vielma*, 218 F.3d at 466 (citing 42 U.S.C. § 2000e-5(f)(1) and stating that because the ninety-day period will be triggered only by receipt of EEOC's "right to sue" letter, receipt of federal letter appears to be exclusive mechanism for commencing federal filing period).

Allstate argues *Vielma*, and by implication our construction of the Act, ignores

that limitations periods are typically shorter and more restrictive under Texas law than federal law. For example, Texas law requires that a suit be filed within sixty days following the conclusion of the administrative process, but federal claims may be filed up to ninety days after the agency process concludes. According to Allstate, the construction set forth in *Vielma* ignored the obvious intent of the Texas Legislature because it expanded the limitations period by allowing state law claims to be filed long after federal claims would be barred.

This argument, however, does not take into account the effect of section 21.256, which states that "[a] civil action may not be brought under this subchapter later than the second anniversary of the date the complaint relating to the action is filed." Tex. Lab.Code Ann. § 21.256. Regardless of whether the complainant receives the TCHR's "right to sue" letter before or after the complainant receives the EEOC's "right to sue" letter, the complainant is still time-barred from filing *any* state claims later than two years after the date the complainant originally filed the complaint with the EEOC/TCHR and checked the dual-filing box. Thus, our construction of section 21.254 does not expand the limitations period outside the two-year provision of section 21.256 and does not frustrate the legislature's intent.

Allstate also asserts *Vielma's* construction of section 21.254 is inconsistent with section 21.202. That section provides that "[a] complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred." Tex. Lab.Code Ann. § 21.202. According to Allstate, *Vielma* allows a complainant to institute TCHR proceedings after the EEOC charge has been filed and investigated, which can be almost a year after the alleged conduct occurred.

Allstate contends such an outcome would be adverse to the 180–day limitations period in section 21.202.

We disagree with Allstate's interpretation of "complaint" and conclude section 21.202 does not conflict with the Fifth Circuit's interpretation of section 21.254. Section 21.202 does not require a complainant to *file suit* within 180 days of the unlawful practice; rather, section 21.202 provides that the complainant must *bring her initial complaint to the TCHR* within 180 days of the unlawful practice. *See id.* Because section 21.202 would not be adversely affected by *Vielma's* interpretation of section 21.254, Allstate's argument is not persuasive.

Allstate next contends the Fifth Circuit's comparison to other state's laws does not support *Vielma's* interpretation of the Texas statute because the three cases cited in *Vielma* either lack a reasoned analysis of the issue presented here or depend on state systems and statutes that fundamentally differ from the Act. Notwithstanding any comparison to other states' laws, the application of sound principles of statutory construction, as set forth above, leads to the conclusion that under section 21.254, the EEOC's "right to sue" letter does not trigger the TCHR's filing period.

Because Ledesma was not required to bring her state claims to court within sixty days of receiving the EEOC's "right to sue" letter, the trial court erred in granting Allstate's plea to the jurisdiction. We sustain Ledesma's first issue.

## PREEMPTION OF COMMON LAW CLAIMS

In her second issue, Ledesma argues the trial court erred in sustaining Allstate's special exceptions and dismissing her common law claims of intentional infliction of emotional distress and negligent supervision because the Act does not preempt

those claims. To support her contention, Ledesma relies primarily on *Perez v. Living Centers–Devcon, Inc.*, 963 S.W.2d 870 (Tex.App.—San Antonio 1998, pet. denied), which held the Act is not the exclusive state law remedy for conduct that violates its provisions. *Perez*, 963 S.W.2d at 875. There, the plaintiff's failure to file a complaint with the TCHR did not preclude her from pursuing common law causes of action that arose from the same facts as her TCHRA claim. *See id.* In response, Allstate argues that because Ledesma's common law claims were identical to her TCHRA claim, the Act governs those claims and provides the exclusive state law remedy. Furthermore, Allstate asserts *Perez* was wrongly decided, it fundamentally conflicts with the Act's underlying policy, and it threatens to render the Act meaningless by allowing a plaintiff to circumvent the Act's administrative requirements merely by pleading identical, duplicative causes of action labeled something other than TCHRA violations.

A trial court has broad discretion in ruling on special exceptions. *Fuentes v. McFadden*, 825 S.W.2d 772, 778 (Tex.App.—El Paso 1992, no writ). We reverse these rulings only if there has been an abuse of discretion, i.e., whether the trial court acted without reference to any guiding rules and principles, or in other words, acted in an arbitrary or unreasonable manner. *Id.*

After reviewing the cited cases and deciding the issue of whether the Act preempts common law claims was one that had never before been addressed in a Texas court, the *Perez* court looked for guidance in the Act's express purposes, specific provisions, and legislative history and intent. *Perez* concluded the Act's purposes contained neither an intent to serve as an exclusive remedy, nor an intent to preclude common law causes of action.

*See Perez*, 963 S.W.2d at 874. While finding the statute contains no provision that implies the TCHR's administrative review system precludes a suit for common law causes of action, the *Perez* court found the opposite proposition can be inferred from the Act's express provisions. For example, the court interpreted section 21.211, the Election of Remedies provision discussed above, to mean a plaintiff cannot have two bites at the apple. *Id.* "That is, a plaintiff cannot *first* sue a defendant-employer for a non-TCHRA cause of action for conduct arising from the same facts as employment discrimination and *then* pursue a claim of employment discrimination through the administrative review system established under the TCHRA...." *Id.* (emphasis added). Lastly, the court found the Act's legislative history contained no indication that legislators meant for the Act to preclude common law causes of action. *See id.* at 875. "Instead, the legislative history indicates that legislators believed the [Act] would give Texans an *additional* remedy—that is, a state level administrative review process." *Id.* (emphasis added).

In reaching its holding, the *Perez* court distinguished its own facts from those of several cases cited by Allstate in the present case. For example, *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485–88 (Tex.1991), was distinguishable because *Schroeder* did not address whether the Act precluded suit under common law causes of action that arose from the same facts. *Schroeder* merely addressed whether the plaintiff had to exhaust administrative remedies under the Act before suing under that law. *See Perez*, 963 S.W.2d at 872 (concluding *Schroeder's* language about exclusivity of TCHRA's remedial system not controlling). Additionally, the *Perez* court distinguished its own case from *Stinnett v. Williamson County Sheriff's Department*,

858 S.W.2d 573 (Tex.App.—Austin 1993, writ denied) (specificity of the Act preempted more general provisions of another statute, Whistleblower Act), because that case dealt with two statutes and the question of which of the two was the more specific and would therefore control. Lastly, the *Perez* court found *Vincent v. West Texas State University*, 895 S.W.2d 469 (Tex.App.—Amarillo 1995, no writ) (concluding that the Act preempted Texas Tort Claims Act), inapplicable because, unlike *Perez*, *Vincent* involved another statutory cause of action at issue, namely the Texas Tort Claims Act. *See Perez*, 963 S.W.2d at 873. We also add that in *Vincent*, the plaintiff did not file any complaints with either the EEOC or the TCHR, and therefore, unlike the present case, the plaintiff in *Vincent* did not exhaust her administrative remedies.

Allstate also cites *Schroeder* and *Beverly v. Lone Star Lead Construction Corp.*, 437 F.2d 1136, 1139 (5th Cir.1971), as authority for the general proposition that courts reject efforts to end-run requisite administrative processes and jurisdictional prerequisites. *Schroeder*, however, dealt specifically with the plaintiff's attempt to proceed with his age discrimination claim under either the administrative review procedures in Article 6 of the Commission on Human Rights Act (CHRA) or the judicial review procedures in Article 7 of that Act. *See Schroeder*, 813 S.W.2d at 486. It did not deal with whether the CHRA preempted a plaintiff's common law claim. *Beverly* is also distinguishable as that case dealt with whether a finding of "no reasonable cause" by the EEOC foreclosed a complainant's right to sue under Title VII. *See Beverly*, 437 F.2d at 1141.

■ Based on the issue and facts before this Court, we are persuaded by the reasoning and holding in *Perez*. However, while Ledesma likens her case to *Perez*, a case in which the plaintiff failed to file a claim with the EEOC or the TCHR within the required time frame and was therefore left with only the pursuit of her common law claims, Ledesma's case is more analogous to *Perez's* successor, *Gonzales v. Willis*, 995 S.W.2d 729 (Tex.App.—San Antonio 1999, no pet.). There, (unlike *Perez*), the plaintiff pursued *both* a claim under the Act and common law claims of intentional infliction of emotional distress and negligence. *See id.* at 737, 738. The trial court granted the defendant's motion for directed verdict on the plaintiff's negligence claims on the ground those claims were preempted by the Act. *See id.* at 737. In noting that *Perez* was factually different because Perez pursued only her common law claims, *Gonzales* concluded *Perez's* no-preemption holding was not limited to the facts of *Perez*. *See id.* at 738. By exhausting her administrative remedies, the plaintiff in *Gonzales* acted consistently with the legislative intent underlying the Act, namely, encouraging compliance through voluntary resolution and informal processes other than litigation. The same can be said of Ledesma: because she pursued her administrative remedy, she acted consistently with the Act's legislative intent.

■ Our decision to follow *Perez* and *Gonzales* does not render the Act meaningless by allowing a plaintiff to circumvent the administrative requirements merely by pleading identical, duplicative causes of action labeled something other than TCHRA violations. Rather, our decision furthers the purposes of the Act by providing a plaintiff an additional means of redress. As noted above, nothing in the Act indicates the legislators intended that Act to be the exclusive remedy available to a plaintiff. Plaintiffs who choose to pursue their common law claims are free to do so. A plaintiff choosing to pursue a TCHRA

claim may do this, too, so long as he or she has not already brought similar common law claims in another state proceeding. *See* TEX. LAB.CODE ANN. § 21.211; *Vought,* 68 S.W.3d at 109. The common law election of remedies doctrine and the one-satisfaction rule would limit any potential for a plaintiff's double recovery. *See Gonzales,* 995 S.W.2d at 740, n. 1.

We conclude the Act does not preempt Ledesma's common law claims of intentional infliction of emotional distress and negligent supervision/training. Therefore, the trial court erred in sustaining Allstate's special exceptions and dismissing Ledesma's common law claims with prejudice. We sustain Ledesma's second issue.

Having sustained both of Ledesma's issues, we reverse the judgment of the trial court and remand all claims to the trial court for further proceedings.